Mr. Harper? Good morning, your honors, and may it please the court. I'm Douglas Harper. I'm counsel for the plaintiff appellant Nathaniel Brown. We are appealing the reversal by the district court. I'm sorry. We are seeking reversal. I need to perhaps leave the room and come back. I need to start over. We're seeking reversal and remand of the 12B6 dismissal of counts 1, 2, and 3 regarding Mr. Brown's seizure and unlawful detention. He was held for 452 days on the second accusation that he was a parole violator. And we are also seeking reversal and remand regarding the dismissal of count number 4, which claims deliberate indifference to his medical condition. Mr. Harper? Yes, your honor. Our time is short, so let me ask you my principal question. Yes. Which is, what is the bearing on this appeal of our decision in Werner against Wall? Two months ago, we dealt with the Wisconsin version of that practice. And we held that as a matter of law, the defendants are entitled to qualified immunity. So why isn't that equally applicable to the Illinois version of the practice? My understanding of that case, it's a different issue. Well, that dealt with Wisconsin. But both Illinois and Wisconsin have policies under which people are kept in custody, sex offenders are kept in custody until they can find a lawful living arrangement. Yes. We held that the defense is entitled to qualified immunity in Wisconsin. Why aren't the people entitled to qualified immunity in Illinois? Yes. And my answer is not simply because one is Wisconsin and the other is Illinois. That's not my answer. My answer is that here, the statute that is set up, which was cited by the district court, what it does here is that the state of Illinois is granting parole before the determination has been made about whether or not parole should have been ordered in the first place. That's just the way in which the state carries out its policy. It grants parole, and then it revokes it before the guy gets out. Why does that change the analysis under federal law? Well, for a number of reasons. First, Your Honor, it does not comply with the requirements of Morrissey to make the inmate a parolee and then leave the decision to revoke parole in the hands of. Is there any disputed issue of fact that needs to be resolved? I thought it was just a given in your client's case that he did not have a lawful living arrangement. Well, Your Honor, the living arrangement. Did he or didn't he? He did. He did or did not? He did have a lawful living arrangement. He challenged, when he was presented with a second violation of parole report, the pleading states that he, appendix page 28, paragraph 34, he pleads that he did read the allegation and he observed that they were false. And so he did have a valid host site. The second time around. The second time. He actually had a valid host site the first time around. But we're purposely not challenging the first detention because at that point, there's some reasonable argument that could be made that the state was not on notice because it did not have the benefit at that time of the order from the parole board that he was not a parole violator. And so we skip over those 95 days of detention. We focus on the 452 days of detention that result from the second accusation after the parole board determined he is not. Was the paper presented then to the board saying that he had adequate housing? Is that what you're saying? And that's part of the record? Your Honor, I. Or was it his allegations saying he had? Did he have an address that he gave and said, this is where I'm going to be second time around? I don't know what was actually given to the parole board. I know there were conversations with the parole board officer and Mr. Brown. I know they discussed it. It appeared not to be an issue at the time. And when the order came down regarding the housing issue, even then, it appeared not to be an issue to the parole board because he was found not to be in violation of the terms of his parole. And I would assume if that actually was a term in condition of parole, the parole board would have said, this is a violation. You are a violator, but you can cure the violation by submitting a proper host site address. And that's not what happened. What happened is the parole board made the ruling that he's not a violator. And then it made a notation that it was waiting for the host site to be addressed. But that was not the reason for the, it was not referenced as a violation of parole. And I'm looking right now at the order. The appendix page number 45, there's a handwritten notation waiting on response for prospective host site. Appendix 45, is there a specific page? Is that a multi? Yes, Your Honor. It's our page number 45 in the appendix. That is the parole board's order regarding the second matter, the second violation of parole. But Your Honor, also, if the state of Illinois actually sincerely thought that that was a violation of parole, they never would have lodged the second accusation. They would have simply said the parole board has made the determination, if that so existed. The parole board's made the determination that you're not in compliance, and so nothing else needs to be done. But the state did not handle the matter that way. And instead, the day that the parole board issued its order, that's when the state of Illinois lodged its second accusation, raising the exact same claims, that he was in violation of his parole for not having a host site and not signing the agreement. And not signing the agreement, which agreed to electronic monitoring? Is that what you're saying? That's the allegation. Now again, Your Honor, I'd ask the court to look at our appendix page number 45. That's the parole board's order. It has a section right here on the right hand corner in the little box. It says special order. And there is a provision here where someone could have checked whether or not electronic monitoring was or was not required. And this box on this order is not checked. And so nothing in the record shows that electronic monitoring was ever ordered or required by the parole board. And so that's one of the reasons why it's important. And we raised this in our briefing. The second detention occurred, there was no warrant. The parole allegation itself is not signed. Where it should be signed, it's signed where there's a space for the name of the person who hands the document to Mr. Brown. But it's not signed where there is a space for the name of the person who brings the allegation. And I don't see how errors in filling in forms support a federal claim. Here's why, Your Honor. Because one of the issues is whether or not the state acted reasonably. Whether or not the state believed. There's no general federal requirement that states have to act reasonably. We're dealing with questions of law. Now, I can understand the argument, if it was made properly in the district court, that if your client contended that he fulfilled all the requirements of release and was kept in prison anyway without even an opportunity to contest whether he fulfilled all the requirements, there is a due process problem. Yes. That I understand. But it doesn't have anything to do with whether forms were signed in the right place. Your Honor, I raise that point because it goes to the qualified immunity. It doesn't have anything to do with state regulations either. Well, it goes to the qualified immunity issue. And it also goes to whether there was reasonable suspicion. No, the qualified immunity issue under federal law is whether the law was clearly established in your client's favor. It's not whether state regulations were followed or all forms were signed. Qualified immunity has to do with the clarity of the federal legal rule and nothing else. Well, Your Honor, at the point that Mr. Brown was detained, the rule was clear. And it was announced by the Supreme Court and the Morrissey Holdings. Then you don't want to be telling us that Werner was wrong because Werner held that there is qualified immunity. You may be saying that your client's position is distinctive because your client says he was substantively entitled to release. Well, I certainly don't want to re-argue Werner. But it is a different case because it's based on a statute that's worded differently. It's based on facts that are different because Mr. Brown did contest whether or not there was a valid host site in the district court. And he, in fact, at the time, had a valid host site. But again, the violation that we're complaining about is not that he was held even though he had a valid host site. Because in Werner, I don't believe there was a determination by whatever state body is in charge of adjudicating parole issues. I don't believe there was a determination about whether or not a parole violation did or did not occur. And we have that here. Here, the Illinois Prison Review Board, which is the body in charge of making that determination, it made a decision that Mr. Brown was not in violation of the terms of his parole. I asked the court again to consider the order at our appendix, page number 45. It says he is found not to be a violator. Now, this is the state body in Illinois that is entrusted with this duty. And they've made this determination. Whatever else? No, maybe we're not communicating. Is it your contention? Forget about what the state bodies said. Is it your contention that, substantively, your client met the requirements for release because he had a lawful living place, he had signed all the consents he needed to sign, and so on? Yes. OK. Yes, he did. Right. He absolutely did. Yes. That's the question, not what some state actors say. I see my red light is on. If there are no other questions, I have three minutes reserved for rebuttal. Thank you, Your Honors. Ms. Walsh. Walsh. So, Ms. Walsh, why don't you begin right there on those two points, that he had a place to stay, and that he mentioned the box wasn't checked, and so this whole issue of electronic monitoring. So where are you on this? Because I didn't get that in your brief. The central question here, good morning, the central question here is, did he plead a plausible claim? And the answer to that is no, because if you look at his complaint, I mean, counsel suggested that he did have a site, he did sign the agreement, but there's nothing in the complaint that alleges that. What he alleges, and what counsel pointed to, was paragraph 34, which is on appendix page 28, and all it says is he was speaking, the plaintiff was speaking to. We don't follow fact pleading rules, we have claim pleading rules. What would be more important to me is whether he ever argued in the district court that he was substantively entitled to release. Did he argue that? Not on the ground that he had a host site and that he had signed the electronic monitoring, no. Of course, the reason for having hearings, as Morrisie said, is to track down facts like this. Exactly. It sounds like, at least the allegation of this case is, that Illinois has in place a system that will hold, without a hearing, people who are substantively entitled to release, but who, because of the absence of a hearing, can't show this to the prison officials. Well, no, that's not true, Your Honor. I mean, Murdoch, the district court decision in Murdoch explained exactly how the system was working. And what happened was, as I look at his complaint, what I see is that his meeting with- Wait, wait, wait, wait, wait, wait. Murdoch, I understand, was settled. We don't have a final adjudication. No, maybe Murdoch was partially dismissed in the end. OK, nothing was appealed to this court. Correct. Sorry, not settled, but not appealed either. Correct, thank you, Your Honor. And so the meeting with Chavera after the second, we're only talking about the second event, the meeting with her was, as I read it anyway, the meeting with her was the preliminary Morrisie hearing, right? And that he went to her, this is the opportunity that someone has to say, I don't, I don't, you know, I should be out, however you want to talk about it. I think there's a big semantic question here that, you know, is he on parole, is he not on parole, is he revoked, is he not revoked? I mean, the question is, you know, the parole board says, or the prisoner review board says, you are entitled to release. But as Murdoch explains, that's not the end of the story. Illinois has a bifurcated system that does not allow the department to release somebody who has not complied with the conditions that the board set. And one of those, there are two conditions here, and I think there's no disagreement about that. The complaint alleges that one is that he did not comply with the electronic monitoring, and the other is that he didn't have a host site. The prisoner review board's order, which counsel pointed to at page 48, I believe, of his. You see it. Right, 845, rather. 45. Right, 845, you know, acknowledges that he does not yet have the host site. And Illinois, the Department of Corrections is not allowed to release somebody under Illinois law who doesn't have a host site. So regardless of the PRB's decision that, yes, you haven't violated, that doesn't mean that he's entitled to release under Illinois law. And thus, the department had reasonable suspicion and consequently probable cause to keep him here until he satisfied those conditions. And that's the question. Did what the department do in both issuing what we're calling the parole violation report, but in fact was a notice that we can't release you because you haven't complied with the conditions, that certainly was issued on reasonable suspicion. Because again, he did not, there's nothing in his complaint that alleges that he had a host site or that he had signed the agreement. And in fact, going back again to paragraph 34 on page 828, which is the one that counsel cited, what he told Ms. Chavarria was, Brown read the report, this parole violation report, noted that it contained false statements and refused to sign it. That's it. So what is the false statement? I don't know. I mean, I don't know what the false is. Is the false statement, no, I have a host site? He never says that. Is the false statement, no, I signed the agreement? No, he never says that. So I don't know what the false statement is. And because of that, I don't, there's no plausible way to read this to say that the department employees, you know, that Ms. Chavarria did not have reasonable suspicion to keep her. Now, with regard to the other two defendants, the warden, Chandler, and the director, you know, the, you know, Mr. Randall, the, you know, wardens, directors are busy people just like judges. They don't keep track of every single, you know, inmate in their prison or in their department. Now, you know, the allegation is that these two defendants knew or should have known that they have ultimate responsibility. Well, that's respondeat superior. That's not a basis for Section 1983 liability. And I would be, in any event, I would be perfectly happy to join Judge Easterbrook and say that, Werner, it gives us qualified immunity here. So with regard to at least the detention and seizure questions, I think it's, you know, certainly the dismissal of the complaint needs to be affirmed. I mean, it seems quite straightforward here to me. With regard to the Eighth Amendment claim, we didn't really have a chance to talk too much about that yet. And this is only against Chandler. And what it's based on, apparently, starts with a 2007 comment that she said to him, I don't believe you. You know, you are faking it. Well, this was in 2007. And right after that, he was sent home from the hospital. So Warden Chandler was not alone in thinking that there was nothing wrong with him. The doctors thought that there was nothing wrong with him in 2007, initially, because they sent him back to the prison. So then, a year, when was it? When was the next one? In August. So that was in March of 2007. And then, in October of 2009, she denied his grievance as an emergency. And this was the grievance in which he said, Dr. Misrobian is retaliating against me for having filed grievances about me by not going forward with the recommendations of the hospital to go back for testing and so on. Well, it wasn't an emergency. And in fact, when it went through the regular system, the plaintiff did, in fact, receive the testing and so on scans that he was asking for. So that, and we're not even clear from the signature, the warden's signature, or the space of the warden's signature, that she, in fact, Warden Chandler, signed it or one of her designees signed it. So again, this is the kind of respondeat superior claim that just doesn't go anywhere. And then the only other thing is her comments that, or sorry, Dr. Carter's comment that he believed, this is the allegation, that he believed that the plaintiff should be in the health care unit. This is on page A31. This is paragraph 45 of the complaint. Dr. Carter told plaintiff that he believed plaintiff should be reassigned, but defendant Chandler was against it. Well, Dr. Carter's belief is not medical treatment. If the plaintiff had alleged, I ordered, I put in an order for you to go to the health care unit, and Dr. Chandler scuttled, or Warden Chandler scuttled it, well, that would be an Eighth Amendment violation. If anything, what this is, is an Eighth Amendment violation by Dr. Carter, who is perhaps implying, well, I would do it, but I'm taking into account non-medical reasons. That is Dr. Chandler's opposition. And under Petty's and all the case law, taking non-medical reasons to make treatment decisions would be a violation of the Eighth Amendment. Certainly, Warden Chandler's disagreement about where the plaintiff should be when there's no medical treatment plan for him to be in the health care unit is not an Eighth Amendment violation. So unless the court has any questions, we believe that this court should affirm the dismissal of the plaintiff's seizure claim against Shivera, his detention claims against Randall and Chandler, and his Eighth Amendment claim against Chandler, because he failed to plead a plausible claim for any of them. And at the very least, the Chandler and Randall are entitled to qualified immunity on the detention claim. Thank you very much. Thank you, Ms. Walsh. Mr. Harper, your time has expired, but you may have a couple of minutes. I will be brief. I won't use the three minutes that I hope to reserve. First, in addressing Judge Easterbrook's comment, I believe that the state's response argument is exactly why this case differs from Werner. This is the argument that the distinction between being a parolee or not a parolee is a semantic matter. I don't see that in any Supreme Court holding, and I don't see that in any holding of this court, that once an inmate, once a prisoner, has become a parolee, that that's simply semantic. I don't see that in any opinion from any court. What I do see is that Morrissey holds that when a prisoner is determined to be a parolee, then a conditional liberty interest applies. That's the Supreme Court's holding. That's the law. And what the state of Illinois has done here is they've set up a mechanism that does not follow that law because it allows an administrator single-handedly to decide, I am not satisfied that the parolee has a host site. And so even though he is a parolee, he has a conditional liberty interest, and he's entitled to two hearings, a preliminary hearing to determine if there's probable cause to hold him for the plenary hearing, to probable cause to believe that he may have violated the terms of his parole, and then an actual plenary hearing to determine whether or not parole has been violated. That's what the law requires. That was not done here. And the state, the Department of Corrections knew that was not going to take place. Yes, Your Honor. I didn't mean to interrupt you, Mr. Harper. And so the department knew that was not going to take place because they had been notified by the Prisoner Review Board and because they had the benefit of the second parole order. And so that distinguishes this case from Werner. This is not semantic. Could I take you back to paragraph 34 for a second? I'm sorry, Judge? Could I take you back to paragraph 34 of the complaint? Yes. What are the false statements that are contained that he refused to sign? Judge, yes. He said he was presented with the report and he noticed there were false statements. The report is at page 46. And it's a one-sentence line. It says, offense, failure to provide a host site for ED, refused to sign ED board order acceptance. It's just one line. Those are false. That one sentence, that's false. Mr. Brown looked at it. He saw where it says offense. This is false. It's false that he failed to provide a host site.  So your position is he had a host site at that point? Yes. Yes, Your Honor, he did. He had a host site at both times. Did you offer to prove this in the district court? No, Your Honor, we did not. And the reason we did not is there's a problem. If all you're relying on is the fact that the parole board the first time said no violation, and there's no independent proof that he is substantively eligible for relief, I think you've got only half a case. Your Honor, if this were a dismissal on a summary judgment motion, I would agree. We would need the proof. But this is a dismissal on a Rule 12b-6, failure to state a claim. The plaintiff says it wasn't, I'm sorry, the defendant says it wasn't even alleged. That it wasn't alleged? That he was substantively entitled to release. That it wasn't even alleged. Your Honor, what we alleged was that he had a conditional liberty interest that was denied because he was seized unreasonably. But the language in the complaint, did the language in complaint say that he had a host site? It did not. The language? And that he was willing to sign the electronic monitoring. The language in the complaint did not reference? No, so it didn't go to that specifically. And then there was no evidence introduced in the district court. So in terms of us looking at a record to try to interpret what that meant, it's a problem. Well, Your Honor, we never reached out. And you're saying no, because you weren't on summary judgment. So you didn't need to do that. So you didn't think you needed to allege that in the complaint, the specific address or the fact that he was willing to sign the order? Correct. And if, yes, because this was on a motion to dismiss. If the state thought that that was an issue, they should have raised that as an affirmative defense. But they did not. They brought this as a 12B6, failure to state a claim. And our claim is that he was held, he was seized and detained in violation of his conditional liberty interest. All right. Thank you. Did you want to make your comment? Do I have one minute to address the Eighth Amendment claim? You may have that minute. Thank you, Your Honor. Your Honor, I simply want to point out that in 2007, Mr. Brown had a triple bypass while he was in the Department of Corrections. His housing was changed to the health care unit. That's the hospital. And he had arterial stent surgery after that in 2008. But after the first parole violation was lodged, and he was brought back to the correctional facility in 2009, his housing was changed. And he was sent from the hospital at the prison, placed in general population. And from 2009 until, from August of 2009 until June of 2010, he remained in general population. And it's our pleading that that is a, that's in deliberate, that shows deliberate indifference to his medical condition. Apparently one or more of his doctors thought he needed to be in the health care unit, and that's why he was housed there following his triple bypass. The fact, once he was returned to the prison and he was in general population, his doctor said, I believe you should be back in the hospital, but Warden Chandler is against it. It's true that's not a medical finding, but it's the opinion of his doctor. And it says that if not for the warden being against it, or it certainly implies that if not for the warden being against it, he would be moved back to the hospital. And I assert to the court that's all the pleading has to do is present the plausible case. And so we've done that. Thank you, Your Honor, and I appreciate the additional time. Thanks to both counsel. The case is taken under advisement and the court will proceed to the